UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>v.<br><br>IVAN PULIDO JAUREGUI,<br><br>  Defendant. | Case No. 24cr1448-AJB<br><br>**Memorandum Decision Re Third-Party Petition** |

Third-Party Petitioner, Maria Esther Ramirez ("Petitioner"), moved this Court for a hearing to adjudicate the validity of Petitioner's claim of interest in the property identified in the Preliminary Order of Criminal Forfeiture in the above-entitled case: the United States currency value of $26,000.00 U.S. currency and an Order returning said seized. (Doc. No. 291.) After ordering reciprocal discovery,[1] the Court held an evidentiary hearing on May 1, 2025. (Doc. No. 325.) Testimony was given by Agent Benchekroun and Petitioner. Neither party called Defendant, Ivan Pulido Jauregui, as a witness. There were no other witnesses. This Memorandum Decision follows.

---

[1] The Government was ordered to turn over any investigation reports ("ROIs") related to the seizure and forfeiture, and Petitioner was ordered to turn over all bank statements, records and deposit receipts as well as cancelled checks, business records including, profit and loss statements, balance sheets, and cash flow statements or ledgers, invoices and receipts and tax records including tax returns.

## I. BACKGROUND

Defendant, Ivan Pulido Jauregui, pled guilty to conspiracy to bring undocumented aliens to the United States for the purpose of commercial advantage and private financial gain, with the intent to violate the immigration laws of the United States, and knowing and in reckless disregard of the fact that such aliens had not received prior official authorization to come to, enter, and reside in the United States, in violation of Title 8, United States Code, Section 1324 (a)(2)(B)(ii), all in violation of Title 18, United States Code, Section 371. (Doc. No. 169.)

Defendant further agreed to the administrative and/or civil forfeiture of all properties seized in connection with this case which Defendant agreed are subject to forfeiture to the United States pursuant to 8 U.S.C. § 1324(b). (*Id.*) Defendant's Plea Agreement in this regard includes the $26,000 named in the Indictment and claimed by Third-Party Petitioner. (Doc. No. 57 at 12.)

## II. LEGAL STANDARD

8 U.S.C. § 1324 (b) allows for the seizure and forfeiture of conveyances, including vessels, vehicles, or aircraft, that have been used in violations of certain subsections. The gross proceeds of such violations and any property traceable to those proceeds can also be subject to forfeiture. The government carries the burden of proof regarding the forfeitability of the property by a preponderance of the evidence. *United States v. Badder*, 678 F.3d 858 (10th Cir. 2012). The government must prove that there is a nexus (a substantial connection) between the offense and the specific property, as well as the amount involved. *United States v. Leyva*, 916 F.3d 14 (D.C. Cir. 2019); 18 U.S.C. 983(c)(3). The petitioner carries the burden of innocent ownership by a preponderance of evidence. 18 U.S.C. § 983(d).

## III. DISCUSSION

Based on the admissible evidence in this case, the Court finds that the Government has met its burden of proof, by a preponderance of the evidence, as to the

required nexus between the proceeds and the criminal activity charged in this case. The Court also finds that Petitioner has failed to establish innocent ownership of the property or that it was from a lawful source.

There is no dispute that the proceeds were seized on July 18, 2024, when government agents conducted a consent search of the property at 1052 Evelyn St., San Diego, California. Petitioner lived at the property with her son Henry Pulido ("Henry").[2] Henry is Defendant Ivan Pulido Jauregui's ("Ivan") nephew. Petitioner is Ivan's ex sister-in-law.

There is also no dispute that Petitioner and Henry consented to the search of their premises upon request of the government agents, who wanted to search for Ivan, drugs, weapons, and bulk cash. Henry and Petitioner disclaimed Ivan's presence or any drugs or weapons. Petitioner volunteered that there was a large amount of cash on the property. She led the agents to two hiding places: the bottom of a water cooler (Gov't. Exh. 1) and a linen closet (Gov't. Exh. 2). It is also without any controversy that the money added up to $26,000 and was banded by denominations. According to the government agents, the denominations of 20s, 50s and 100s were wrapped in tinfoil and paper towels, (Gov't Exhs. 3, 4).

Agent Benchekroun testified that the money was wrapped in a manner consistent with illegal proceeds he encounters in his line of work. Petitioner told the agents that the money was her personal savings from her house cleaning business and hidden there because she did not trust banks, and did not want Henry to find it. Petitioner's argument that this is consistent with "every other Latino seeking to hide cash savings" is without evidentiary support. (Doc. No. 327 at 5.)

Agents went to the scene of 1052 Evelyn St. during their attempts to surveil for and arrest Ivan. They executed a search warrant on Ivan's residence (636 Iona Drive),

---

[2] Because Henry Pulido and Ivan Pulido Jauregui have similar surnames, the Court uses their first names in this section for ease of reference.

were searching for him, and traveled to 1052 Evelyn St, 1.3 miles away. (Def. Ex. 3.)

Henry was known to the agents given past contacts in connection with other law-enforcement matters and through surveillance of the participants in the conspiracy which is the subject of this criminal action. Henry's relationship to Ivan and home address were known to the agents. Henry had told Agent Benchekroun that his family was involved in alien smuggling activity in a prior "probation" interview. On July 18, 2024, Henry also told agents that Ivan had called him the day before and said that arrests had been made and that Ivan was clearing out his house believing agents were coming to search. On the morning of July 18, 2024, Henry told the agent that Ivan had dropped three cars off in front of 1052 Evelyn and put some "stuff" in the house. While Agent Benchekroun did not make a contemporaneous report of these conversations, the ROI from Homeland Security confirms much of the facts. (Def. Exh. 3.) Agent Benchekroun's account is credible.

Petitioner told the agents that the funds were her personal earnings from her house cleaning business that she was saving in the house because she did not "trust banks." She also stated that the money was wrapped in the manner described above to hide them from Henry. Petitioner did not present any indicia of ownership of the money or its source that day. Henry disclaimed any knowledge of the money to the agents.

On the strength of this evidence, the Court finds that the Government has established an appropriate nexus between the alien smuggling conspiracy and the seized proceeds. The Government's knowledge of the conspiracy's activities, including multiple incidents of the seizure of large cash amounts and vehicles entering the United States, intelligence provided by Henry about his family's activities, and Ivan's delivery of the vehicles and "some stuff" to the property in question, support this finding.

In addition, the way the proceeds were stored is highly suggestive of the way in which bulk cash and other contraband are wrapped and stored by criminals. Also, other bulk cash was found during other parts of the investigation according to Agent

Benchekroun's testimony, including in a car Petitioner had used and drove into the United States. Petitioner was not in that car at the time of that earlier event.

Finally, the admission in Ivan's plea agreement, (Doc. No. 57), that the property was all forfeitable, as connected to his criminal activity, also supports this finding.

In examining Petitioner's evidence with regard to the lawful nature and source of the money, the Court finds the evidence woefully short. In fact, the vagaries of Petitioner's testimony and documentary evidence tend to prove, rather than disprove, the Government's position that the proceeds were from illegal activity.

While Petitioner claims that the proceeds were saved over the years 2022, 2023, and 2024 from her house cleaning business, there is little evidence to support that. While it is true she did run a cleaning business, there is no clear record of earnings that would support sufficient earnings allowing her to save $26,000 within that time period. At the hearing, Petitioner did produce evidence of being a victim of bank fraud, which would support her lack of trust of banks. However, despite the fraud, she maintained that bank account and utilized it to deposit checks and Venmo receipts, and asserted she was about to deposit some of the $26,000 in the bank to facilitate her move to Tennessee.

Moreover, while she has some checks and bank deposit information, they show more modest receipts then claimed on her tax returns. The Court also finds it notable that Petitioner's tax returns were filed after the claim in this case was initiated. Further undermining her ownership over, and the legitimacy of, the $26,000, Petitioner testified that the accountant preparing the returns used figures volunteered by Petitioner, without any ledger or verifiable bank deposit support for the claimed totals. Her claimed adjusted gross income in 2023 was $30,844, and in 2024 was 31,069. But her bank statements for those years show deposits in the range of $5,000 each year. No bank statements for 2022 were offered. This is inconsistent with the notion that her earnings would support the ability to save $26,000 over the three-year period.

Petitioner's credibility is further in doubt when considering her 2022 tax return, in which she claimed $16,000 of gross income, despite receiving a 1099 for over

$18,000 for one client she worked for that year. She also testified that she had done some additional cleaning work in 2022 for other clients, none of which she declared on her 2022 tax return. The amounts for that other work were described as modest.

As noted, while there is little doubt that Petitioner did some cleaning work, there is no proof of actual earnings in a magnitude such that she could accumulate $26,000 over the course of a three-year period based on the evidence provided. It is surprising that ledger of accounts, calendars, cleaning schedules or other business records were not kept. Indeed, even assuming the income figures she claimed are correct, self-employment taxes (15.3% of income[3]), car payments, telephone, and modest living expenses as discussed during the hearing, would significantly reduce disposable earnings, and would make it extraordinarily hard to save the sum of money claimed. This is especially true when considering 2022 was a low earning year. For 2023 and 2024 (through the seizure date of July 18, 2024), there was a nineteen-month period of potential income. Realistically, earnings in 2024 would need to be discounted to the partial period involved.

Based on the admissible evidence in the case, and the controlling law, the Court finds that Petitioner has failed to meet her burden of innocent ownership or a lawful source of the money.

## IV.  CONCLUSION

Therefore, for the reasons stated herein, Petitioner's claim is denied, and the final order of forfeiture is made herewith in favor of the United States to the $26,000. The hearing exhibits are ordered released to the parties to maintain until final resolution of any appeal.

**IT IS SO ORDERED**.

Dated: May 8, 2025

Hon. Anthony J. Battaglia
United States District Judge

---

[3] The Court takes Judicial Notice of this undisputable fact.